UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL ZAPATA,

           Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

           Defendant.

CASE NO. C08-5670BHS-KLS

REPORT AND RECOMMENDATION

Noted for June 26, 2009

This matter is before the Court on defendant's motion to dismiss plaintiff's complaint for judicial review of the denial of his application for disability insurance benefits, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) due to lack of subject matter jurisdiction or, in the alternative, Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Dkt. #4). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing defendant's motion, plaintiff's response to that motion, and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2004, plaintiff filed an application for disability insurance benefits, alleging disability

1 as of January 1, 2003. (Dkt. #14-2, Exhibit 1, Decision, p. 1). That application was denied initially and on

2 reconsideration. (Id.). Plaintiff requested a hearing, which was held before an administrative law judge

3 ("ALJ") on July 13, 2007. (Id.). On September 24, 2007, the ALJ issued a decision, determining plaintiff

4 to be not disabled. (Id. at p. 9).

5 On March 17, 2008, plaintiff's request for review of the ALJ's decision was denied by the Appeals

6 Council. (Id., Exhibit 2). In denying that request, the Appeals Council stated:

> In looking at your case, we considered the reasons you disagree with the decision and
> the additional evidence listed on the enclosed Order of Appeals Council [see id.,
> Exhibit 4, pp. 1-2).
>
> We considered the additional evidence, a psychological report dated January 29, 2007,
> from the Alderwood Psychological Services.
>
> In the above report, you were diagnosed with PTSD [post traumatic stress disorder],
> Panic disorder, with agoraphobia, and a major depressive disorder. You were assessed
> with a GAF score of 21. However, the findings and conclusions of the report are not
> supported. For example, a treating source note dated February 7, 2007, indicated that
> you were on medication and doing relatively well. You were less depressed and
> anxious, and were sleeping okay. Four months late on June 6, 2007, you continued to
> do well, getting along better with your girlfriend and your concentration was not
> impaired. Overall, you were stable and assessed a GAF score of 63.
>
> The additional medical notes from the Department of Veteran's Affirs shows that you
> continued to do well, and although you still had panic attacks, they were not intense.
>
> We found that this information does not provide a basis for changing the
> Administrative Law Judge's decision[.]

18 (Id. at pp. 1-2). The Appeals Council's denial also informed plaintiff of his right to seek judicial review by

19 filing a complaint in federal court within 60 days of the date of receipt of the denial, with receipt being

20 presumed to occur five days after the date appearing on the denial, unless it could be shown that the denial

21 was not received within that five-day period. (Id. at pp. 2-3). Plaintiff further was informed that if he was

22 not able to timely file a complaint in federal court, he could request an extension of time in which to do so

23 from the Appeals Council if he had a "good reason" for not timely filing it. (Id. at p. 3).

24 On August 13, 2008, plaintiff, through new counsel, filed with the Appeals Council a request for an

25 extension of time to file a complaint in federal court, which reads in relevant part:

> Pursuant to 20 CFR § 404.982,[1] please grant an additional 25 days from this date

---

[1] That regulation allows any party to an Appeals Council's decision or denial of review, to request that time for filing a civil action in federal court be extended. 20 C.F.R. § 404.982. The request must include the reasons as to why such action was not filed within the required time period. Id. A showing of "good cause for missing the deadline" will result in the time period for filing the

REPORT AND RECOMMENDATION
Page - 2

within which to file an action in Federal district court. . . .

After Mr. Zapata was denied Review by the Appeals Council on March 17, 2008 . . . , his counsel at the time . . . decided not to pursue an appeal into Federal district court. Mr. Zapata became unrepresented just at the time he was suffering with psychosis from major depression, along with panic disorder with agoraphobia and other mental impairments. In fact, on March 24, 2008, Mr. Zapata was found to only have a GAF [global assessment of functioning] Score of 20 . . .

Please consider as Good Cause (20 CFR § 404.911 (a) (4) and (b) (1))[2] (see following Psychological report completed by Kathleen Wetherbee, Ph.D., based upon her evaluation which took place on March 24, 2008 – one week after the Appeals Council denial of review) for missing the deadline to timely appeal, Mr. Zapata's lack of counsel as well as his significant and severe mental impairments.

(Id., Exhibit 3). On September 12, 2008, the Appeals Council issued a response to this request, which also reads in relevant part:

**Our Action On Your Request for Reopening**

Under our rules, we may reopen (look again at) and change a determination or decision within certain time limits for any of the following reasons.

- New and material evidence[.]

- A clerical error.

- The evidence considered in making the determination or decision clearly shows that there was an error.

We found no reason under our rules to reopen and change the decision. This means that the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case.

We also considered the psychological update assessment dated March 24, 2008, from Alderwood Psychological Services. Your client's chief complaint was that he often felt overwhelmed by his circumstances, which caused him to confine himself close to home for fear of having another panic attack or becoming critically ill (prior heart attacks) and being unable to obtain the necessary assistance. The examiner indicated that your client was currently experiencing further decline in both his physical and psychological health, and gave him a global assessment of functioning (GAF) score of 20. However, this evidence is not relevant to the period before the Administrative Law Judge, and

---

action in federal court being extended. Id.

[2]When a claimant "fails to timely request . . . review" by a federal district court, the Commissioner "applies the criteria in section 404.911 . . . in determining whether good cause for missing the deadline exists." SSR 91-5P, 1991 WL 208067 *1; see also 20 C.F.R. § 404.982 ("To determine whether good cause exists, we use the standards explained in § 404.911."). In determining wether such "good cause" exists under 20 C.F.R. § 404.911, the Commissioner considers a number of circumstances, including, pursuant to 20 C.F.R. § 404.911(a)(4), whether "any physical, mental, educational, or linguistic limitations" prevented the claimant "from filing a timely request or from understanding or knowing about the need to file a timely request for review." Further, several "[e]xamples of circumstances where good cause may exist" are set forth by the Commissioner in that regulation, including where the claimant was "seriously ill" and was "prevented from contacting" the Commissioner "in person, in writing, or through a friend, relative, or other person." 20 C.F.R. § 404.911(b)(1).

> does not warrant a change of the Judge's decision dated September 24, 2007. The Appeals Council previously provided rationale for rejecting a similar report from this source.
>
> **We Have Denied Your Request For More Time to File a Civil Action**
>
> Under our rules, we may extend the time to file a civil action if you have a good reason for filing late.
>
> You further stated that your client could not file on time because he became unrepresented just at the time he was suffering with psychosis from major depression and other significant mental impairments. However, the Appeals Council does not find evidentiary support of a psychiatric condition that would have prevented timely filing of a civil action.
>
> After considering the facts in this case, we find no reason under our rules to extend the time to file a civil action. Therefore, we have denied your request for more time.

(Id., Exhibit 4, pp. 1-2) (emphasis in original).

On November 5, 2008, plaintiff filed a complaint in this Court seeking review of the decision of the Appeals Council to not reopen the Commissioner's "final administrative decision" and to deny his request for additional time to file this action. (Dkt. #1-#3; Dkt. #4, p. 3; Dkt. #5). Plaintiff alleges that by declining to reopen that decision and denying his request for additional time to file a complaint in federal court, his due process rights under the United States Constitution were denied as well. (Dkt. #4, p. 3). Specifically, plaintiff claims that he was unrepresented during the time when he had to file a complaint in federal court, and that he suffered from a mental illness preventing him from being able to do so. (Id. at p. 2). On March 27, 2009, defendant filed his motion to dismiss, arguing that since plaintiff had failed to timely seek review in this Court, he has no right to such review. (Dkt. #14).

In his response to defendant's motion, plaintiff argues judicial review of his complaint is proper in this case, asserting federal jurisdiction to review this matter exists, because he has raised in his complaint a colorable constitutional claim. (Dkt. #17). While defendant has not filed a reply to plaintiff's response, the time for doing so has passed. In addition, although plaintiff requests oral argument, the undersigned finds such argument to be unnecessary here. Accordingly, defendant's motion to dismiss is now ripe for review. For the reasons set forth below, the undersigned finds plaintiff has raised a colorable due process claim, and thus review of that claim is proper, and further finds that because that claim has merit, his request for an extension of time to file an action in federal court should have been granted, and thus that his complaint is appropriately before this Court and subject to judicial review.

DISCUSSION

I.  Standard of Review

A challenge to the Court's subject matter jurisdiction is "treated as brought under" Fed. R. Civ. P. 12(b)(1), "even if improperly identified by the moving party as brought under" Fed. R. Civ. P. 12(b)(6). St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989); see also Corrie v. Caterpillar, Inc., 503 F.3d 974, 980 (9th Cir. 2007) (motion to dismiss attacking substance of complaint's jurisdictional allegations treated as if brought under Fed. R. Civ. P. 12(b)(1)). Thus, while defendant has brought his motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), because the subject matter jurisdiction of the Court is being challenged, the merits of that motion shall be analyzed under the standards governing those brought pursuant to Fed. R. Civ. P. 12(b)(1).

Unlike motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), "a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." St. Clair, 880 F.2d at 201; see also Corrie, 503 F.3d at 980. The party opposing the motion then must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." St. Clair, 880 F.2d at 201. As such, it is not an abuse of the Court's discretion to consider such "extra-pleading material," even when "necessary to resolve factual disputes." Id.

The Court may not decide the issue of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) if "the jurisdictional issue and the issue on the merits are . . . factually so 'completely intermeshed,' that 'the question of jurisdiction is dependent on decision of the merits.'" Id. at 202 (citations omitted). In this case, however, these issues are not so intermeshed as to preclude judicial review under Fed. R. Civ. P. 12(b)(1), and, indeed, the issue of the Court's authority to review the ALJ's decision is completely divorced from plaintiff's claims regarding the actual merits of that decision.

Lastly, as is true for motions brought pursuant to Fed. R. Civ. p. 12(b)(6), "all disputed facts" are to be "resolved in favor of the non-moving party." Costco v. United States, 248 F.3d 863, 865-66 (9th Cir. 2001); Murphy v. Schneider National, Inc., 362 F.3d 1133, 1139 (9th Cir. 2004); McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000) (court favorably views facts alleged to support jurisdiction); United States v. One 1997 Mercedes, E420, 175 F.3d 1129, 1130 n.1 (9th Cir. 1999) ("Because the court is reviewing in

part an order granting in part and denying in part a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), all allegations of material fact stated in the complaint are taken as true and construed in the light most favorable to the nonmoving party.").

II.   The Court's Subject Matter Jurisdiction

Defendant argues in his motion that the Court has no jurisdiction to review the denial of plaintiff's application for disability benefits, because plaintiff's request for judicial review was not made "within sixty days after the mailing to him of notice of" the Commissioner's "final decision" to deny that application as required by 42 U.S.C. § 405(g).[3]  Section 405(g) reads in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

Thus, as written, this provision "clearly limits judicial review" to a "final decision" of the Commissioner "made after a hearing." Califano v. Sanders, 430 U.S. 99, 108 (1977).

The meaning of the term "final decision" in Section 405(g), however, is left to the Commissioner "to flesh out by regulation." Weinberger v. Salfi, 422 U.S. 749, 766 (1975); see also Mathews v. Eldridge, 424 U.S. 319, 330 (1976) ("[U]nder s 405(g) the power to determine when finality has occurred ordinarily rests with the Secretary."). According to those regulations, claimants have a "right to judicial review" only after they have taken all "necessary administrative steps" to complete the "administrative review process." 20 C.F.R. § 404.900(a).  These steps consist of the initial determination regarding a claimant's entitlement to benefits, reconsideration of that determination, a hearing before an ALJ, and review by the Appeals Council of the ALJ's decision. Id.  Each of these steps, however, "usually must be requested within certain time periods," and in the above order. Id.

With respect to the time period for instituting a civil action seeking judicial review in federal court, the Commissioner's regulations require that any such action "be instituted within 60 days after the Appeals Council's notice of denial of request for review" of the ALJ's decision or the "notice of the decision by the Appeals Council is received by" the claimant, unless "extended by the Appeals Council upon a showing of

---

[3] As noted above, plaintiff filed his complaint in this Court on November 5, 2008, or more than seven months after the date the Appeals Council issued its denial of plaintiff's request for review of the ALJ's decision.

REPORT AND RECOMMENDATION
Page - 6

1  good cause." 20 C.F.R. § 422.210(c); see also 20 C.F.R. 404.981 (claimant may file action in federal court
2  within 60 days after date claimant receives notice of Appeals Council's action).  The date of receipt of the
3  notice of the decision of the Appeals Council is "presumed to be 5 days after the date of such notice,
4  unless there is a reasonable showing to the contrary." 20 C.F.R. § 422.210(c); see also 20 C.F.R. § 404.901
5  ("Date you receive notice means 5 days after the date on the notice, unless you show us that you did not
6  receive it within the 5-day period.").

   A.     Equitable Tolling

As just indicated, the requirement that a claimant seek judicial review of a "final decision" made after a hearing by filing a civil action in federal court within 60 days of mailing the notice thereof to him or her, may be waived by either the Commissioner or the Court. Johnson v. Shalala, 2 F.3d 918, 923 (9th Cir. 1993).  Equitable tolling may be applied in regard to this time requirement, but only "when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999); see also Bowen v. City of New York, 476 U.S. 467 480 (1986) (equitable tolling should be applied only if equities in favor thereof are so great that deference to agency's judgment is inappropriate).

As defendant notes, the Supreme Court found equitable tolling to have been appropriate in Bowen, because "the government's secret policy prevented claimants from discovering a violation of their rights." Johnson., 2 F.3d at 923.  In addition, it seems that the Third Circuit has interpreted Bowen "to hold that equitable tolling is appropriate only when governmental conduct prevents claimants from recognizing that they have a valid claim." Id. (citing Bailey v. Sullivan, 885 F.2d 52, 63-64 (3rd Cir. 1989).  That Court of Appeals went on to further hold that because the regulations at issue in that case were "openly applied," the claimants "should have challenged" them "within the statute of limitations." Id. (quoting Bailey, 885 F.3d at 64).  The Ninth Circuit in Johnson appears to have adopted this reasoning, as apparently has the Seventh Circuit. See id.; Johnson v. Sullivan, 922 F.2d 346, 354 (7th Cir. 1990).

Defendant argues there is no justification for applying equitable tolling here, and thus for extending the 60-day deadline to allow plaintiff to file his complaint in this case.  As noted above, in requesting an extension of time to file his complaint, plaintiff argued good cause existed under 20 C.F.R. § 404.911(a)(4) and 20 C.F.R. § 404.911(b)(1).  Also as noted above, pursuant to 20 C.F.R. § 404.911(a)(4), in

REPORT AND RECOMMENDATION
Page - 7

1 determining whether "good cause for missing a deadline to request review" has been shown to exist, the
2 Commissioner considers whether the claimant had any mental limitations preventing him or her "from
3 filing a timely request or from understanding or knowing about the need to file a timely request for
4 review." In addition, 20 C.F.R. § 404.911(b)(1) provides as an example of a circumstance where "good
5 cause" may be found to exist, that where the claimant was "seriously ill" and was "prevented from
6 contacting" the Commissioner "in person, in writing, or through a friend, relative, or other person."

7       In arguing there is no indication that plaintiff's mental impairment was so severe that it prevented
8 him from understanding or knowing about the need to file a timely request for review, or that plaintiff was
9 so seriously ill that it prevented him from contacting the Commissioner, defendant points to the evidence
10 the Appeals Council considered concerning plaintiff's mental functioning during the period of late January
11 2007, through mid-June 2007. See (Dkt. #14-2, Exhibit 2, pp. 1-2). But the Appeals Council considered
12 this evidence only in regard to plaintiff's request for review of the ALJ's decision, not his later request for
13 an extension of time to file a complaint in this Court. In addition, that evidence bears little relevance to the
14 state of plaintiff's mental functioning during the pertinent time period, i.e., nearly a year later, from March
15 22, 2008 (5 days after the date of the denial of that request), through late May 2008.

16       Nor does it appear the Appeals Council considered the additional medical evidence – consisting, as
17 noted above, of a psychological evaluation performed by Kathleen Wetherbee, Ph.D., on March 24, 2008,
18 and set forth in a report dated April 17, 2008 (Id., Exhibit 4, Confidential Report), plaintiff submitted with
19 his request for an extension of time – in denying that request. Rather, the Appeals Council discussed that
20 evidence only in the context of determining that it had formed an insufficient basis for changing the ALJ's
21 decision, given that Dr. Wetherbee's evaluation and report did not concern the period prior to September
22 24, 2007, the date the ALJ issued his decision. See (Dkt. #14-2, Exhibit 4 (letter from Appeals Council,
23 dated September 12, 2008), p. 1). Instead, in denying the request for an extension of time to file an action
24 in federal court, the Appeals Council merely found no "evidentiary support of a psychiatric condition that
25 would have prevented timely filing of a civil action." (Id. at p. 2). Even if Dr. Wetherbee's report had
26 been considered in denying that request, such denial was erroneous, as the report itself provides the
27 evidentiary support the Appeals Council found to be lacking.

28       As plaintiff's counsel pointed out in the request for extension of time he filed on plaintiff's behalf,

1 the psychological evaluation Dr. Wetherbee performed, took place on March 24, 2008, just one week after
2 the plaintiff's request for review of the ALJ's decision was denied. See (Id., Exhibit 2). Defendant argues
3 Dr. Wetherbee's report shows plaintiff was oriented, with judgment and memory both being intact as well,
4 and fails to show he did not have the mental capacity to effectively manage his own affairs at the time.
5 The undersigned, however, does not agree that Dr. Wetherbee's report fails to make this showing. Indeed,
6 that report contains significant, probative – and, so far, uncontradicted – clinical evidence that plaintiff
7 suffered from serious mental functional impairments and limitations, which likely prevented him from – or
8 at least significantly interfered with his ability to – timely file a complaint at the time.

9 Plaintiff, for example, told Dr. Wetherbee that he often felt "so overwhelmed by his circumstances
10 that he frequently" experienced panic attacks and confined himself "to or close to his home." (Id., Exhibit
11 4, Confidential Report, p. 1). He also reported having auditory hallucinations, including hearing voices,
12 and experiencing depersonalization, where he would feel he was "viewing his life through a surveillance
13 camera," which were noted to be "new developments since his last complete [psychological] testing [was
14 conducted] in [January] 2007." (Id. at p. 2). While plaintiff demonstrated no apparent thought distortion or
15 disorder, he did have "slowness in his stream of thought," "thought blocking on occasion," "disturbances
16 of delusions," and concrete abstract thinking. (Id.). In addition, although plaintiff was oriented, he seemed
17 to demonstrate "a clouding of consciousness," which Dr. Wetherbee stated "at times" can be "an indicator
18 of an organic brain impairment." (Id.).

19 Plaintiff, furthermore, "had difficulty sustaining attention to external stimuli," and reported that he
20 "frequently" found "himself in a room or even in his vehicle," unable to remember "what he was going to
21 do." (Id. at pp. 2-3). While plaintiff, as pointed out by defendant, did have intact remote and recent remote
22 memory, his recent memory "was poor in that he was unable to recall events that transpired the day
23 before" he and Dr. Wetherbee met, "or other similar details." (Id. at p. 3). Plaintiff's "immediate
24 retention" also was "notably impaired," as was his concentration. (Id.). Psychological testing performed
25 by Dr. Wetherbee "revealed an elevation [in anxiety] beyond the 'severe' range and well into the 'extreme
26 anxiety or panic' range." (Id.). Indeed, she commented that plaintiff's anxiety had "increased to nearly a
27 maximum point of measurement," and was "clearly not responding to his current medications." (Id.). Dr.
28 Wetherbee found the same to be true with respect to plaintiff's depression. (Id.).

REPORT AND RECOMMENDATION
Page - 9

Dr. Wetherbee diagnosed plaintiff with chronic post-traumatic stress disorder, a panic disorder with aboraphobia and a severe major depressive disorder with psychotic features. (Id.). Dr. Wetherbee assessed plaintiff with a GAF score of 20 as well,[4] and opined that the "breadth and severity" of his "illnesses" were "great", and that their impact on his life had been "devastating". (Id. at p. 4). Dr. Wetherbee further stated that plaintiff's "psychological health" and "mental status" had deteriorated since psychological testing was performed on him in late January 2007, which included an increase in both his memory impairment and depression, a "sharp" increase in his anxiety, and, as noted above, disturbances in his perception and deterioration in his thought processes. (Id.). In addition, she described plaintiff as being in the midst of an "incomprehensible struggle to meet his most basic needs." (Id.).

Dr. Wetherbee also believed plaintiff to be "clearly in need of extensive [mental health] treatment," so as to bring his psychological symptomatology under some control and to a more manageable level." (Id.). Defendant does not come forth with any medical or other evidence that calls into question plaintiff's credibility concerning the symptoms he reported at the time, or that discredits the findings and opinions Dr. Wetherbee set forth in her psychological report regarding the nature and severity of his mental condition or the mental functional limitations she found had resulted therefrom. While the descriptions of the medical evidence in the record regarding plaintiff's functioning during the period prior to or as of mid-June 2007, contained in the ALJ's and Appeals Council's desicisions, does indicate the existence of a higher level of mental functioning than was found by Dr. Wetherbee in her report, there is nothing in those descriptions to counter her opinion concerning his subsequent psychological deterioration.

As to whether that opinion satisfies the requirements of 20 C.F.R. § 404.911, by demonstrating that plaintiff's mental condition and limitations prevented him from timely filing a complaint in federal court or from contacting the Commissioner, the undersigned finds the substantial evidence in the record shows that it does, particularly since no other relevant medial evidence has been presented to the Court to

---

[4]"A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. Orcutt v. Barnhart, 2005 WL 2387702 *4 n.4 (C.D.Cal. 2005) (citing Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), (4th ed. 2000) at 32). "It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." Id. "A GAF score of 11-20 indicates some danger of hurting self or others, or the occasional failure to maintain minimal personal hygiene, or gross impairment in communication." Id. (citing DSM-IV at 34); see also McNatt v. Barnhart, 464 F.Supp.2d 358, 361 n.3 (D. Del. 2006) ("[A] GAF score of twenty-one to thirty suggests a serious impairment in communication and judgment, or a severe inability to function.") (citing same) .

1 contradict it. As noted above, Dr. Wetherbee's report shows plaintiff's was "so overwhelmed by his
2 circumstances that he frequently" suffered panic attacks and confined himself to or close to home, had
3 "difficulty sustaining attention to external stimuli," and frequently found himself not being able to
4 remember what he was doing. He also reported experiencing hallucinations, depersonalization, delusions,
5 thought blocking on occasion, and "a clouding of consciousness" indicative of an organic brain
6 impairment.

7 Dr. Wetherbee, furthermore, found that plaintiff's recent memory was so poor, he could not recall
8 events that had transpired the day before she met him for the evaluation, that his immediate retention and
9 concentration were notably impaired as well, and that his anxiety and depression were both in the severe to
10 extreme range and unresponsive to medication. Indeed, Dr. Wetherbee assessed him with a GAF score of
11 20 – indicative of at least a "severe inability to function," as well as "gross impairment in communication"
12 and "the occasional failure to maintain minimal personal hygiene" – and described the impact of his
13 mental impairments on his life as being "devastating". Thus, while such evidence may not have been
14 sufficient for the Appeals Council to reopen the ALJ's decision, because it did not address plaintiff's
15 mental condition prior to the date thereof, it certainly was sufficient to indicate an inability to timely file a
16 complaint. Nor, in addition to having no legal representation during the relevant time period, is there any
17 evidence currently before the Court that another person could have done so on his behalf.

18 Thus, the undersigned does find that plaintiff has satisfied the "good cause" requirement set forth
19 in 20 C.F.R. § 404.911, and the Appeals Council should have granted him the extension he requested on
20 that basis. That being said, as discussed above, and as noted by defendant, equitable tolling of the time
21 limit for filing a complaint for judicial review appears to be appropriate only where governmental conduct
22 has prevented plaintiff from recognizing he had a valid claim. There is no evidence in the record of that
23 happening in this case. Accordingly, the undersigned finds equitable tolling is inapplicable here as a basis
24 for seeking judicial review of the Commissioner's final administrative decision. That, however, is not the
25 end of the matter in this case.

26 B. Colorable Constitutional Claim

27 Plaintiff rightfully notes there is another set of cases where, as with equitable tolling, "a claimant's
28 interest in having a particular issue resolved promptly is so great that deference to the agency's judgment

[regarding when finality in the administrative review process occurs] is inappropriate." <u>Mathews</u>, 424 U.S. at 330. These cases involve challenges to the Commissioner's decisions made "on constitutional grounds," to which is applied "the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed." <u>Califano</u>, 430 U.S. at 109. This is because such questions "obviously are unsuited to resolution in administrative hearing procedures," thereby making access to the courts "essential" to deciding them, and thus "a statutory scheme" will not be interpreted as foreclosing judicial review, unless there is "clear and convincing" evidence of congressional intent to do so. <u>Id.</u> (citation omitted); <u>see also</u> <u>Boettcher v. Secretary of Health and Human Services</u>, 759 F.2d 719, 721 (9th Cir. 1985).

A claimant's constitutional challenge, however, must be "colorable." <u>Boettcher</u>, 759 F.2d at 721. While it appears that the courts "have not expressly defined what a 'colorable' claim is," the Eighth Circuit has held constitutional claims are reviewable when "not without some merit." <u>Id.</u> at 722 (quoting <u>Jensen v. Schweiker</u>, 709 F.2d 1227, 1230 (8th Cir. 1983)). The Fourth Circuit in turn has indicated that such claims should be dismissed if they "clearly" appear to be "immaterial and made solely for the purpose of obtaining jurisdiction," or they are "wholly insubstantial or frivolous." <u>Id.</u> (quoting <u>Holloway v. Schweiker</u>, 724 F.2d 1102, 1105 (4th Cir. 1984)). It seems these factors are applicable in the Ninth Circuit as well. <u>Id.</u> (finding claimant's claim to be colorable, because it was not wholly insubstantial, immaterial or frivolous); <u>see also</u> <u>Udd v. Massanari</u>, 245 F.3d 1096, 1099 (9th Cir. 2001) (constitutional challenge not wholly insubstantial, immaterial, or frivolous raises colorable constitutional claim); <u>Evans v. Chater</u>, 110 F.3d 1480, 1483 (9th Cir. 1997).

Where a claimant raises a "<u>colorable</u> constitutional claim of due process violation that 'implicates a due process right [either] to a meaningful opportunity to be heard,' or to seek reconsideration of an adverse benefits determination," therefore, judicial review of that claim will not be precluded. <u>Evans</u>, 110 F.3d at 1483 (internal citation omitted) (emphasis added); <u>see also</u> <u>Udd</u>, 245 F.3d at 1099 ("[D]ue process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied."). Here, plaintiff claims that by declining to reopen the ALJ's decision and then denying his request for additional time to file a complaint in federal court, the Appeals Council denied his due process rights as well. This is a colorable constitutional claim.

REPORT AND RECOMMENDATION
Page - 12

As discussed above, a constitutional challenge "that is not 'wholly insubstantial, immaterial, or frivolous' raises a colorable constitutional claim." <u>Udd</u>, 245 F.3d at 1099 (citation omitted). On the other hand, "[s]imply couching in constitutional language what is in reality an argument" that the Commissioner abused her "discretion in refusing to re-open a claim, does not convert the argument into a colorable constitutional challenge." <u>Ingram v. Secretary of Health and Human Services</u>, 830 F.2d 67 (6th Cir. 1987); <u>see also</u> <u>Davis v. Schweiker</u>, 665 F.2d 934, 936 (9th Cir. 1982) (finding constitutional allegation that was purely discretionary and unsupported by facts insufficient). The standard for asserting such a challenge, however, is not particularly high. <u>See</u> <u>Rolen v. Barnhart</u>, 273 F.3d 1189, 1191 (9th Cir. 2001) (because claimant claimed he lost benefits due to being denied due process, and cited arguably relevant case law in support of his due process claim, he satisfied this standard).

"Where a claimant alleges that a prior determination should be reopened because he suffered from a mental impairment and was not represented by counsel at the time of the denial of benefits, he has asserted a colorable claim." <u>Udd</u>, 245 F.3d at 1099. A lack of representation, though, is not required to state such a claim. <u>Id.</u> at 1099 n.3. To prevail on this kind of a claim, "an attack on the merits" of the administrative decision is not sufficient. <u>Evans</u>, 110 F.3d at 1482. Instead, the claim "must 'implicate a due process right to a meaningful opportunity to be heard.'" <u>Id.</u> (citation omitted).

The Commissioner issued SSR 91-5p to clarify its policy on "establishing good cause for missing the deadline to request" administrative or judicial review of the denial of a disability application, and to "avoid the improper application of res judicata or administrative finality," when the evidence in the record "establishes that a claimant lacked the mental capacity to understand the procedures for requesting review." 1995 WL 208067 *1. Specifically, SSR 91-5p reads in relevant part as follows:

> When a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination . . . and the claimant had no one legally responsible for prosecuting the claim (e.g., . . . legal representative) at the time of the prior administrative action, SSA [Social Security Administration] will determine whether or not good cause exists for extending the time to request review. If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action.
>
> The claimant will have established mental incapacity for the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review.

REPORT AND RECOMMENDATION
Page - 13

> In determining whether a claimant lacked the mental capacity to understand the procedures for requesting review, the adjudicator must consider the following factors as they existed at the time of the prior administrative action:
> . . .
> --any mental or physical condition which limits the claimant's ability to do things for him/herself.
>
> If the claimant is unrepresented and has one of the factors listed above, the adjudicator will assist the claimant in obtaining any relevant evidence. The decision as to what constitutes mental incapacity must be based on all the pertinent facts in a particular case. The adjudicator will resolve any reasonable doubt in favor of the claimant.
>
> If the adjudicator determines good cause exists, he or she will extend the time for requesting review and take the action which would have been appropriate had the claimant filed a timely request for review. A finding of good cause will result either in a determination or decision that is subject to further administrative or judicial review of the claim, or a dismissal (for a reason other than late filing) of the request for review, as appropriate.

Id. at *2. A decision made pursuant to SSR 91-5p is reviewed "under the substantial evidence standard to determine whether the claimant lacked the requisite capacity at the time of the adverse benefits decision." Udd, 245 F.3d at 1100. If substantial evidence does not support a determination that the claimant had the requisite capacity, the adverse determination "constitutes a due process violation." Id.; see also Evans, 110 F.3d at 1483 (no violation if substantial evidence supports SSR 91-5p determination).

Where a claimant had no legal representation at the time of the decision, "it is the mental capacity of the claimant that determines whether the requirements of due process have been fulfilled." Udd, 245 F.3d at 1100 n.4. The mental impairment, however, need not "'totally incapacitate' the claimant, but merely . . . 'limit [his] [or her] ability to do things for him/herself.'" Id. at 1101. In addition, the SSR 91-5p determination "must be reversed where . . . any reasonable doubt" is not resolved "in the claimant's favor." Id. (citing Hill v. Callahan, 962 F.Supp. 1341, 1346 (D.Or. 1997) (finding that due process required reopening because there was reasonable doubt claimant had mental capacity to understand procedures for requesting review)).

It is unclear whether the Appeals Council applied the requirements of or made its decision pursuant to SSR 91-5p in this case, as it made no mention thereof in its denial of plaintiff's request for an extension of time to file a complaint in federal court. Even if it did do so, however, the undersigned finds it to not be supported by the substantial evidence in the record as discussed above. That is, the only evidence that was before the Appeals Council – and now the Court – concerning plaintiff's mental condition during the time

1 period in which he was required to file his complaint for judicial review, was the psychological evaluation
2 Dr. Wetherbee performed in late March 2008, which, also as discussed above, indicates plaintiff to have
3 been significantly, if not severely, limited in his ability to do things for himself. Further, to the extent any
4 ambiguity exists as to the exact extent of plaintiff's mental functional limitations at the time, as noted by
5 the Ninth Circuit in Udd, all reasonable doubt must be resolved in plaintiff's favor.

6 Accordingly, the undersigned finds plaintiff lacked the requisite mental capacity during the period
7 of time in which he was required to file his complaint in this Court. The record also shows, and defendant
8 does not contest, that plaintiff was unrepresented at the time as well. As such, plaintiff has met his burden
9 of asserting a colorable due process claim here. In addition, because, as just discussed, that claim also has
10 merit, plaintiff's request for an extension of time to file this action should have been granted, and therefore
11 his complaint is now properly before this Court and subject to judicial review.

## CONCLUSION

Based on the foregoing discussion, the Court should deny defendant's motion to dismiss (Dkt. #4), allow this matter to proceed for a determination on the merits, and require defendant to file an answer to the complaint within the time frame for doing so set forth in Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(a), along with a copy of the administrative record.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 26, 2009**, as noted in the caption.

DATED this 4th day of June, 2009.

Karen L. Strombom
United States Magistrate Judge